UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                              CASE NO. 8:16-cr-295-T-35AEP

ANDREW HALEY MORCOMBE

**UNITED STATES' SENTENCING MEMORANDUM**

The United States of America hereby files its sentencing memorandum in response to the Presentence Investigation Report (PSR), Doc. 224, and in support of a three-year statutory maximum term of imprisonment.

## I.   Background

On November 17, 2011, the Circuit Court in and for Hillsborough County, Florida ("Family Court"), entered a *Final Judgment of Dissolution of Marriage* in the Defendant's marriage with his ex-wife, Jane Lempera ("Lempera"). Trial Ex. 10.  Prior to their dissolution of marriage, the Defendant and Lempera had one child, V.M., who was born in January 2009.

In the years following their marital dissolution, it was abundantly clear from the Defendant's statements and actions that he intended to take full custody of V.M.  At every opportunity, the Defendant interfered or attempted to interfere with Lempera's parental rights.  On March 16, 2011, two days after Lempera filed for divorce, the defendant filed a *Petition for Injunction for*

1

*Protection Against Domestic Violence* ("Petition"), alleging that Lempera struck him with a closed fist.  Trial Ex. 1; PSR ¶28.  The Petition was denied on March 17, 2011, because the Defendant failed to establish a reasonable fear about an incident that occurred 30 days prior.  PSR ¶28.  Not to be deterred, the Defendant filed a *Supplemental Affidavit in Support of a Petition for Injunction Against Domestic Violence*, on behalf of himself and V.M., where he then alleged a new incident wherein Lempera assaulted him while in the car with V.M. PSR ¶28.  The Defendant ultimately agreed not to go forward with the final injunction hearing but only after keeping Lempera away from their daughter for two-weeks.  PSR ¶28.  On September 1, 2011, the Defendant filed another fraudulent injunction against Lempera.  Trial Ex. 3; PSR ¶29. Again, this injunction was denied but only after the Court ordered Lempera not to have contact with their daughter for two weeks.  Unbeknownst to Lempera, the Defendant took their daughter out of the country during this time, in violation of the Court's order and without her permission.  This began a pattern of the Defendant using the court system as a tool of control and manipulation to interfere with Lempera's parental rights.

In 2012, the Defendant and Lempera had a Parenting Plan that granted the Defendant weekend time-sharing, in the Tampa Bay area, with their then four-year old daughter.  The Defendant subsequently obtained employment in

Germany which required him to relocate.  Despite Lempera's initial objections and concerns that the Defendant would abduct their daughter, she agreed for the Defendant to exercise his time-sharing in Germany on a temporary basis.  Trial Exs. 101-111.  Lempera agreed to this arrangement after months of harassing and threatening communications with the Defendant. *Id.*  The temporary agreement allowed V.M. to exercise time equally, with each parent, in two-months blocks of time in Germany and the United States.

In February 2013, Lempera advised the Defendant that she was traveling to Europe with her boyfriend.  Trial Ex. 112.  Like any responsible parent, she made child-care arrangements well in advanced, communicated them to the Defendant, and asked if he wanted to care for their daughter during that time. The defendant received the email, advised that he would check his schedule, and never followed-up with Lempera.  Before going to Europe in May 2013, Lempera again contacted the Defendant and provided him the contact information of the person with whom their daughter would be staying.  The Defendant, recognizing this as an opportunity to take custody of their minor daughter, and manipulating his ex-wife, flew from Australia to Miami, Florida, while Lempera was out of the country.  Upon his arrival, he contacted law enforcement and reported that his ex-wife "abandoned" their

four-year old daughter.  The Defendant then had police accompany him to pick up V.M. from Lempera's "second mother" and he took their daughter back to Australia without Lempera's knowledge or permission.  Before leaving, however, he filed an *Emergency Motion for Temporary Full Custody* where he falsely advised the Court that Lempera had disappeared without explanation.

At a hearing on July 22, 2013, the Family Court denied the Defendant full custody of V.M. and ordered him to return her to Lempera by August 15, 2013.  It was at this hearing, when the Family Court ruled against the Defendant, that he decided to do what he does best, lie and manipulate to get what he wants.  Recognizing the seriousness of his ex-wife's relationship and his potential loss of control over her, Lempera was no longer the sole target of the Defendant's harassment, his ire was now turned to her significant other— Steve.

Prior to returning V.M. to her mother on August 15, 2013, the Defendant again retaliated and manipulated the Family Court in an effort to control, hurt, and interfere with Lempera's parental rights.  The Defendant hired an Australian psychologist, in an attempt to manufacture evidence of abuse against Steve, Lempera's boyfriend.  PSR ¶32.  Two days before bringing V.M. to the United States, the Defendant filed an injunction against

4

Steve, alleging sexual misconduct.  Trial Ex. 13; PSR ¶32.  The Defendant then contacted Lempera's friends and family to spread the vicious lies.

The Family Court held a hearing, evidence was received, and the Court ruled there was no evidence that the Defendant's allegations of abuse occurred and that Lempera's boyfriend, Steve, posed no risk to the Defendant's daughter.  Trial Ex. 15; PSR ¶32.  Lempera finally regained custody of her daughter in October 2013—after more than four long months.

Recognizing that the Family Court was starting to rule against him, the Defendant started laying the foundation for the federal crime for which he was ultimately convicted.  At the end of September 2013, the Defendant announced plans to exercise his time-sharing with V.M. in the United Arab Emirates ("UAE"), a country that is not a signatory to the Hague Treaty. Trial Ex. 22, pg. 25.  When Lempera did not agree to the Defendant taking V.M. to the UAE, the Defendant went into a rage and threatened to sneak into Lempera's house and take V.M. by any means necessary.  Trial Ex. 411.

Lempera, knowing the risks of the Defendant taking their daughter to the UAE, started doing any and everything to insure V.M. was not removed from the country.  At the end of October 2013, Lempera filed a number of motions with the Family Court.  Trial Ex. 19, 20, 22, and 24.  On March 4, 2014, the Family Court, issued an *Order Granting Former Wife's Verified Petition*

*to Relocate and Granting Former Wife's Verified Emergency Motion for Relief Under Section 61.45, Florida Statutes* ("the 61.45 Order"). Trial Ex. 30. In the 61.45 Order, the Family Court noted, "Under section 61.45, the Court is empowered to take steps designed to prevent and deter child abduction and international kidnapping. Section 61.45, Florida Statutes, applies where there is competent substantial evidence that there is a risk that one party may violate the court's parenting plan by removing a child from this state or country or by concealing the whereabouts of a child. The Court may grant relief under Section 61.45, Florida Statutes, where the court finds evidence that establishes credible risk of removal of the child." *Id at ¶ 21-23*. The 61.45 Order also allowed Lempera to relocate to Illinois with V.M. and established a modified parenting schedule for time-sharing with the Defendant exclusively within the United States. *Id.* The 61.45 Order also issued an injunction against the Defendant based on his various threats to take V.M. to the UAE. In particular, The 61.45 Order prohibited the Defendant from removing V.M. from the United States without a court order; it required the Defendant to surrender any United States or foreign passport issued in his daughter's name; it prohibited the Defendant from applying on V.M.'s behalf for a new or replacement passport or visa; and it ordered him not to remove V.M. from a school or similar facility. *Id.*

In late April 2014, the Defendant and Lempera entered into a *Partial*

*Mediated Settlement Agreement* ("Agreement"), which – among other things – modified the parents' time-sharing plan with V.M.  Pursuant to that Agreement, the Defendant acknowledged the Family Court's prior orders (including the 61.45 Order) and agreed to abide by their terms.  The Defendant complied with the terms of the 61.45 Order so the parties scheduled a visitation between the Defendant and V.M. in May 2014.

Only days after signing the Agreement, and during a scheduled visitation with V.M., the Defendant took V.M. to the UAE in direct violation of the 61.45 Order and without providing any notification to Lempera or the Family Court.  He did so after properly surrendering his daughter's passport and then fraudulently obtaining a new one for her from the British Embassy in Miami, Florida.  To fraudulently obtain that passport, the Defendant submitted a fake flight reservation and a doctored "Parenting Plan," which he created by falsifying a previously-issued Family Court "Parenting Plan" and combining it with the signature page of an unrelated court order that bore the Family Court judge's signature.  There is no official court record that exists of the Defendant's falsely-created Parenting Plan.

The Defendant subsequently removed his five-year old daughter from the United States and her mother on May 2, 2014.  He then retained her outside of the country, and away from her mother, for two years.  During the

time the Defendant retained V.M. outside of the United States, he continued to text, taunt and harass Lempera because she had no recourse.

On June 30, 2016, a federal grand jury charged the Defendant in a one-count indictment with international parental kidnapping, in violation of 18 U.S.C. § 1204.  *See* Doc. 1.  The Defendant, who at the time was in the United Kingdom, waived extradition and appeared before United States Magistrate Judge Thomas B. Smith on October 14, 2016, for his initial appearance and detention hearing.  On October 14, 2016, the Court released the Defendant on conditions of release.

## II.    <u>Argument In Favor Of A Statutory Maximum Sentence</u>

A statutory maximum sentence of thirty-six months imprisonment is appropriate for Andrew Haley Morcombe because it is supported by a holistic consideration of the Section 3553(a) factors.  In addition to the sentencing guidelines, this Court must consider factors listed in 18 U.S.C. §3553(a) when formulating a reasonable sentence for the defendant. *U.S. v. Pugh*, 515 F.3d 1179, 1191 (11th Cir. 2008); *Gall v. U.S.*, 552 U.S. 38, 49 50 (2007). In this case, a review of the Section 3553(a) factors support a variance, necessitating a sentence above the sentencing guidelines.

*The Nature and Circumstances of the Offense*

The first portion of 18 U.S.C. §3553(a)(1) directs the court to consider

the "nature and circumstances of the offense." 18 U.S.C. §3553(a)(1). Although the Defendant was charged and convicted of one-count of international parental kidnapping, the May 2, 2014, kidnapping of V.M. was the culmination of years of obstruction and interference of Lempera's parental rights.  The Defendant's conduct in May 2014, clearly demonstrate that he did not have a solitary lapse in judgment. He was a calculated, methodical criminal who could not be deterred. Even after the Family Court's intervention and it taking substantial steps to prevent the abduction of V.M., the Defendant pretended to acquiesce to the Family Court's Orders for the sole purpose of obtaining visitation rights with his daughter.  We now know his assent was pretext so that he could take his daughter out of the country, away from her mother and from U.S. courts.

The "nature and circumstances" of the Defendant's offense is far worse than his suggestion that he was "trying to protect his daughter."  The Defendant attempted to manufacture evidence of sexual abuse, exposed his very young daughter to multiple mental health professionals, perjured himself in state court pleadings, and manipulated the Family Court.  The Defendant presented himself as a law-abiding individual who wanted what was best for his daughter.  In actuality, his kidnapping of V.M. and not allowing her to have physical contact with her mother, no doubt caused irreparable harm.

Despite the initial facade of "protecting his daughter," the Defendant enjoyed the hurt his actions caused Lempera.  During the two years he kept V.M. away from her mother, he taunted Lemepra with photos, videos and mean-spirited text messages like:

> By the way, when are you two getting married?  Why buy the cow when you can get the milk for free 😄
>
> ▮▮▮▮▮ is very clear about who she wants to be with.  Last week she renounced USA citizenship, so it doesn't matter what you and the courts try to pull off in the USA.

Trial Ex. 201.

And

> One of ▮▮▮▮▮ favourite songs is by MC Hammer.  It is called "Can't Touch This"
>
> She said that was what it was like living at your house 😂

Trial Ex. 205.

The Defendant's actions and comments reveal his true intentions.  He was

more preoccupied with hurting Lempera than doing what was best for his daughter.  His behavior demonstrates his complete lack of concern for his daughter's well-being or remorse.

*History and Characteristics of the Defendant*

The government's request for a statutory maximum sentence of thirty-six months imprisonment is also supported by an assessment of the "history and characteristics of the defendant" as required by the second half of 18 U.S.C. §3553 (a)(1).  By no means did the Defendant simply make a mistake, or have a solitary lapse in judgment.  The Defendant has consistently engaged in a plethora of fraudulent, obstructionist conduct indicating an inability to obey the law.

The Defendant is a man who has chosen to repeatedly ignore Court Orders and handle situations the way he deems acceptable.  There is nothing in his history that accounts for his inability to follow the law.  He stated he had a "good upbringing" and had a "great life with great experiences and great opportunities."  PSR ¶41.  Although his parents divorced and his father remarried, he did not report any problems with his stepmother or half-siblings.  PSR ¶42.  In addition, the Defendant stated that he has no personal history of substance abuse, mental or emotional health problems and he was never emotionally, verbally or physically abused by his parents.  PSR ¶41, 56.

11

The Defendant joined the United States Air Force at the age of 18.  He was honorably discharged on May 22, 2013, with the rank of Lieutenant Colonel.  PSR ¶69.  After the Defendant was convicted of the instant offense, the United States Attorney's Office was contacted by the Defendant's former Commanding Officer, Brett Buras.  Buras advised that while in the Air Force, the Defendant committed Basic Allowance Housing fraud, falsified flight records and submitted fraudulent travel vouchers.  He stated, there were several instances where the Defendant provided false records and claimed expenses that were not true.  Buras estimated that the Defendant defrauded the government of approximately $42,000 between December 2006 and August 2011.  The Defendant's illegal conduct was confirmed through an investigation and subsequently referred for prosecution.  Buras advised, however, that the Defendant was not prosecuted.  Buras provided the case agent in this matter reports and documentation corroborating the Defendant's criminal conduct.  They will be submitted to the Court under seal as Ex. A.

This Court should also consider the Defendant's attempt to avoid responsibility and punishment.  The Defendant kidnapped his daughter and fled to the UAE because he knew it was outside of the purview of United States law enforcement and courts.  By fleeing to a country with no diplomatic ties to the United States the Defendant was able to avoid accountability for

12

two years.  Aside from his flagrant violation of the Family Court's order and criminal activity, the Defendant has also avoided his financial parental responsibilities by regularly failing to pay alimony or child support for V.M.

The Eleventh Circuit specified the "history and characteristics" component of the §3553(a)(1) factor "is aimed at distinguishing among defendants who commit a particular offense or type of offense."  *United States v. Irey*, 612 F.3d 1160, 1202 (11th Cir. 2010) *cert. denied*, 131 S. Ct. 1813, 179 L. Ed. 2d 772 (U.S. 2011).  Although the Defendant's crimes fit the "heartland of the offense" the guidelines address, his egregious conduct and unwillingness to follow the law distinguish him as particularly worthy of a statutory maximum sentence.  Consequently, the defendant's history and characteristics indicate that he should receive a sentence of thirty-six months imprisonment.

*Seriousness of the Crime and Need for Just Punishment*

A sentence of thirty-six months is further supported by the factor described in Section 3553(a)(2)(A), "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  18 U.S.C. §3553(a)(2)(A).  Congress has explained that the "just deserts" concept in sentencing is a means of reflecting the "gravity of the defendant's conduct", as well as the "harm done or threatened by the offense."  S.Rep. No. 98-225, at 75-76, 1984

U.S.C.C.A.N. 3258-59.  Accordingly, "the greater the harm the more serious the crime, and the longer the sentence should be for the punishment to fit the crime." *Irey*, 612 F.3d at 1206.  In the present case, the significant harms inflicted and threatened by the Defendant's conduct demonstrate the need for a statutory maximum sentence.

*Adequate Deterrence to Criminal Conduct (general deterrence)*

Another significant 3553(a) factor this Court must consider is "the need for the sentence imposed "to afford adequate deterrence to criminal conduct." 18 U.S.C. §3553(a)(2)(B).  In an effort to abate similar conduct in the future, this Court should impose a severe sentence that will serve as a warning to individuals considering similar conduct.  A statutory maximum sentence will deter comparable activities by sending the message that such behavior is unacceptable and will be adjudicated harshly within the Eleventh Circuit.

*Protection of the Public*

This Court must also consider "the need for the sentence imposed…to protect the public from further crimes of the defendant." 18 U.S.C. §3553(a)(2)(C).  Likewise, the Defendant's statements to law enforcement and others indicate he has not truly accepted responsibility for his actions, and has yet to realize the lasting harm he has inflicted upon his daughter.  By continuing to state he was "protecting his daughter," despite the rejection of

14

his allegations by law enforcement, the Courts and investigative agencies, the Defendant seemingly believes everyone is wrong except him.  Due to the Defendant's history of coercion, manipulation, and obstruction, the only way to deter his conduct and protect V.M. and Lempera is to impose the most severe sentence under the statute.

## CONCLUSION

For the reasons stated above, the United States respectfully requests that the Court sentence the defendant to a statutory maximum sentence of thirty-six months imprisonment.

Respectfully submitted,

MARIA CHAPA LOPEZ
United States Attorney

By:  */s/ Stacie B. Harris*
STACIE B. HARRIS
Assistant United States Attorney
Florida Bar No. 21672
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
E-mail: Stacie.Harris@usdoj.gov

*/s/ Kaitlin R. O'Donnell*
KAITLIN R. O'DONNELL
Assistant United States Attorney
USAO No. 167
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
E-mail: Kaitlin.ODonnell@usdoj.gov

**U.S. v. Andrew Haley Morcombe**          **Case No. 8:16-cr-295-T-35AEP**

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 18, 2018, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Bjorn Erik Brunvand, Esq.

By:   */s/ Stacie B. Harris*
STACIE B. HARRIS
Assistant United States Attorney
Florida Bar No. 21672
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
E-mail: Stacie.Harris@usdoj.gov

*/s/ Kaitlin R. O'Donnell*
KAITLIN R. O'DONNELL
Assistant United States Attorney
USAO No. 167
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
E-mail: Kaitlin.ODonnell@usdoj.gov